FILED
01 SEP -6 PM 3: 13
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MABEL CLARK, et al., | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-01-N-0491-S |
| MEL MARTINEZ, Secretary for U.S. Department of Housing and Urban Development, et al., , | ] |
| Defendant(s). | ] |

ENTERED
SEP 0 6 2001

**Memorandum of Opinion**

**I.   Introduction.**

The court has for consideration defendant's motion to dismiss, filed April 25, 2001. The issues have been briefed by both parties and are now ripe for decision. Upon due consideration, the motion will be **GRANTED IN PART** and **DENIED IN PART**.

**II.   Background.**[1]

Plaintiffs Mabel Clark and Odean Holsten ("plaintiffs") are residents of the Bankhead Towers, a Birmingham, Alabama residential apartment complex whose rents are subsidized under the Section 8 housing assistance payments program of the United States Housing Act. *See* 42 U.S.C. § 1437f *et seq.* Appearing *pro se*, plaintiffs bring the above-styled action against Mel Martinez, Secretary of the Department of Housing and Urban Development ("HUD"), Bankhead Towers, Ltd., a Tennessee partnership with its principal place of

---

[1] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record. These are the "facts" for purposes of this opinion only. They may not be the actual facts. *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994), cert. denied, *USX Corp. v. Cox*, 513 U.S. 1110 (1995).

business in Knoxville, Tennessee, and four individually named persons: F. Rodney Lawler, Claude N. Wood, Jerry H. Wood, and H. Pat Wood.[2] Plaintiffs cite as the bases for their claims the First, Fourth and Fourteenth amendments to the Constitution of the United States, as well as 42 U.S.C. §§ 1404, 1434, 1437, and 1441, and 42 U.S.C. §§ 1981, 1983. (Doc. # 1, 19).[3]

The factual basis for the plaintiffs' claims can be reduced to the following: the Bankhead Towers are in a state of disarray. The heating and cooling systems do not work; the sprinkler systems do not work; the elevators do not work; emergency exits are blocked; the complex is fraught with garbage and smells "like a landfill"; criminal activity on the premises is frequent; security, maintenance and management are arbitrary, inept, and often non-existent; an on-site beauty salon does not serve African-American tenants; and "[o]ppression and terrorism are the main components of insuring management. Freedom of expression is a forbidden right in Bankhead Towers. To even attempt to exercise the right thereof is to receive a look of reprimand, a Late Charge Notice, or eviction." (Doc. # 1, Pl. Compl.). Finally, late fees for overdue rent are assessed in an allegedly unlawful manner: penalties are assessed at $5 per month plus a $1 per day late fee; and the late fee notice does not account for the total sum owed. As relief, plaintiffs seek repairs, improvements, and the implementation of staff and policies that will alleviate the problems

---

[2] The court is not entirely clear whether one additional party, Lawler Wood LLP, is or should be officially involved in this action. Service of the defendants was made at the offices of Lawler Wood. Moreover, a recent letter from defense counsel informing plaintiffs of their obligations pursuant to the Federal Rules of Civil Procedure, refers to the matter as *Clark, et. al v. Lawler Wood, et al.* The court will take any necessary action upon clarification and motion from the parties.

[3] Plaintiffs also assert 42 U.S.C. § 2000aa and 42 § U.S.C. 3531 as a basis for the court's jurisdiction. As neither provision bears upon the facts of this case or provides a means for redress, they are hereby stricken.

described in their complaint, as well as an audit of the Bankhead Towers' books, and reimbursement of money owed to the plaintiffs.

Defendants offer a myriad of reasons as to why the plaintiffs' claims must be dismissed, including the absence of subject matter jurisdiction, the absence of standing, and the failure by plaintiffs to state claims upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (6).[4]

## III.   Legal Standards.

A motion to dismiss tests the legal sufficiency of a complaint. *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997). The court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For the purpose of ruling on a 12(b)(6) motion to dismiss, the court will accept as true all well-pleaded factual allegations of the complaint. Moreover, it views them in a light most favorable to the non-moving party. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Burch v. Apalachee Community Mental Health Servs.*, 840

---

[4] Other grounds offered for dismissal may be disposed of here. Defendants ask for dismissal based upon insufficiency of process and insufficiency of service of process. *See* Fed. R. Civ. P. 12(b)(4), (5). Since the defendants have offered no evidence in support of these grounds, the court deems them abandoned. Defendants' motion to dismiss for lack of personal jurisdiction likewise fails. *See* Fed. R. Civ. P. 12(b)(1). The private party defendants have either their residence or principal place of business in Tennessee. Personal jurisdiction may thus be invoked only if the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment are satisfied. In Alabama, the reach of the long-arm statute is coextensive with due process. *See Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992) (citing *Alabama Waterproofing Co. v. Hanby*, 431 So. 2d 141, 145 (Ala. 1983).

From the facts presented and the posture of this motion, the court is quite satisfied that minimum contacts exist. The subject matter of this action involves property located in Alabama, and the claims pertain either directly to the property, or concern events which transpired upon it. *See Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 & 9 (1984)). Furthermore, the court sees no reason, nor hears one offered by the defendants, as to why litigation in Alabama would offend traditional notions of fair play and justice.

3

F.2d 797, 798 (11th Cir. 1988) (en banc). Finally, and as both parties recognize, a plaintiff proceeding *pro se* will not be held to the strict level of pleadings expected of lawyers, and the court will make efforts to construe the complaint more liberally than it might otherwise. *See, e.g., Hughes*, 449 U.S. at 9-10; *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

**IV.     Discussion.**

The facts, pleadings and inferences fairly drawn in a light most favorable to the plaintiffs, essentially advance three sets of claims.[5] The first set avers a failure on the part of defendants to maintain habitable living conditions at the Bankhead Towers. The second set avers tortious injury inflicted upon plaintiffs as a result of defendants' disregard of the duties owed to plaintiffs and other residents of the Bankhead Towers. The third set avers deprivation of rights secured either by statute or by the Constitution of the United States.

The characteristics of the named defendants bear upon the disposition of these claims, and a brief discussion of them is warranted. HUD (ostensibly Secretary Martinez), is a federal party, with no evident direct connection to the Bankhead Towers beyond the financial assistance provided via rent subsidies.[6] The remaining party defendants are private individuals and business occupying positions of ownership and management with respect to Bankhead Towers.

---

[5] Plaintiffs' further claim discrimination at the "beauty salon," and apparently seek relief pursuant to 42 U.S.C. § 1981. The facts as alleged will not maintain such an action. *See Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998).

[6] The record does not conclusively establish whether HUD's Section 8 contracts are with Bankhead Towers, Ltd., or with a municipal or county housing authority, as intermediary between HUD and Bankhead Towers. *See* 42 U.S.C. § 1437f(b)(1). For purposes of this motion, and based upon the filings of the parties, the court presumes that the contracts exist between HUD and Bankhead Towers, Ltd., directly.

4

### A. Living Conditions

As to both sets of defendants, plaintiffs' claims predicated upon the living conditions at Bankhead Towers must fail. The Housing Act does not purport to establish minimum standards or warranties of habitability, and no express or implied cause of action lies within the provisions of the United States Housing Act cited by the plaintiff. *See Perry v. Housing Auth. of Charleston*, 664 F.2d 1210, 1216-17 (4th Cir. 1981); *Thomas v. Chicago Hous. Auth.*, 919 F. Supp. 1159, 1164 (N.D. Ill. 1996); *see also Mann v. Pierce*, 803 F.2d 1552, 1554 n.1 (11th Cir. 1986). Furthermore, grievances of this sort do not fall within a "specific and definite" provision of the Housing Act that would permit an action pursuant to 42 U.S.C. § 1983. *See Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 431-43 (1987) (recognizing § 1983 action to enforce "specific and definite" provisions of the Housing Act); *see also Miles v. Metropolitan Dade County*, 916 F.2d 1528, 1533 (11th Cir. 1990). The facts alleged *may* be actionable as a matter of state law in state courts against some or all of the defendants. But as a matter of federal law they are not actionable. These counts are accordingly **DISMISSED** as to all defendants, without prejudice to any state claims that plaintiffs may possess.

### B. Tortious Injury

Although somewhat ambiguous, the theories forwarding plaintiffs' second set of claims appear to sound in nuisance, trespass, and general negligence. A plaintiff may not proceed against the federal government on a theory of tort though, unless she follows the procedures of the Federal Tort Claims Act. *See* 28 U.S.C. § 2671 et seq. This includes first presenting the claim to the appropriate agency, and waiting for the agency to either deny

5

it or fail to rule upon the matter within six months. *See Burchfield v. U.S.*, 168 F.3d 1252, 1254-55 (11th Cir. 1999); *see also* 28 U.S.C. § 2675(a). A federal district court cannot exercise subject matter jurisdiction over such a claim if this provision has not been followed. *See Burchfield*, 168 F.3d at 1254-55; *see also Mann v. Pierce*, 803 F.2d at 1554-55. "To satisfy section 2675(a), a claimant must do two things: '(1) give [ ] the [appropriate] agency written notice of his or her claim sufficient to enable the agency to investigate and (2) place[ ] a value on his or her claim.'" *Burchfield*, 168 F.3d at 1255 (quoting *Adams v. United States*, 615 F.2d 284, 289 (5th Cir. 1980), decision clarified on denial of reh'g, 622 F.2d 197 (5th Cir.1980)); *see also* 24 C.F.R. § 17.2 (detailing procedures for filing administrative claims with HUD).

The record fails to establish that plaintiffs have complied with the procedures of the FTCA. A scintilla of compliance with 28 U.S.C. § 2675(a) might be derived from correspondence between plaintiffs' and HUD regarding delinquent rent notices. This correspondence did not, however, allege any tortious activity on the part of HUD, or set forth plaintiffs' value of the claim. Subject matter jurisdiction is thus lacking as to HUD, and plaintiffs' tort claims against it are accordingly **DISMISSED**.

As to the private defendants, plaintiffs' tort claims against them must also be dismissed. The facts may support one or more possible actions under state law, but the court will not scour plaintiffs' complaint for possible state law theories when the sole basis for the complaint is federal law. The tort claims against the private defendants are also **DISMISSED** without prejudice as to any state law claims plaintiffs may possess.

### C. Section 1983 and *Bivens* Actions

The facts also form the underpinnings of two claims under 42 U.S.C. § 1983, alleging deprivation, by the private defendants,[7] of rights secured either by the Constitution or laws of the United States. The first claim arises from allegedly unlawful late fee assessments.[8] The second claim arises from an alleged deprivation of plaintiffs' First Amendment rights.[9]

For the plaintiffs to state claim for which relief may be granted under § 1983, they must demonstrate the deprivation of a specific and definite right secured by the Constitution or laws of the United States, and action by the private individuals under the color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978); *see also Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423 (1987) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)); *Nail v. Community Action Agency*, 805 F.2d 1500, 1501-02 (11th Cir. 1986). Satisfaction of the first prong – commonly denoted as state action – generally satisfies the

---

[7] The court is not clear whether plaintiffs intend to assert these claims against both the private party defendants and HUD, or simply the private party defendants. Assuming the inclusion of HUD was intended, the court finds that such claims against it must be dismissed. For reasons discussed *infra* note 9, HUD simply lacks the relation to the alleged deprivations of Constitutional or statutory rights necessary for it to be named as a party defendant in these claims. The court thus finds plaintiffs to not state these claims against the agency.

[8] The Brooke Amendment to the Housing Act provide the methodology by which rents are to be assessed to individuals receiving assistance under the Housing Act. *See* 42 U.S.C. § 1437a. The Supreme Court in *Wright v. City of Roanoke Redevelopment & Housing Authority* held that private plaintiffs could bring an action pursuant to 42 U.S.C. § 1983 to enforce this provision. *See Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423, 427-432 (1987); *see also Miles v. Metropolitan Dade County*, 916 F.2d 1528, 1532-33 (11th Cir. 1990).

[9] Plaintiffs also claim that the management of Bankhead Towers is evicting tenants and entering the apartments of tenants in a manner inconsistent with their rights under the law. The plaintiffs, however, have not been evicted and have not indicated that they are under the threat of eviction. Nor have the plaintiffs alleged that they themselves have suffered any type of intrusion into their living spaces. A plaintiff must have standing to maintain an action in federal court. This requires a plaintiff to have suffered a concrete and particularized injury, in fact, that is actual or imminent, not conjectural or hypothetical. The injury must be fairly traceable to the challenged action of the defendant, and the injury must be capable of being redressed by a favorable decision of the court. *See White's Place, Inc. v. Glover*, 222 F.3d 1327, 1329 (11th Cir. 2000) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167 (2000) (quotations omitted)). As to these claims then the plaintiffs lack standing to maintain them.

second prong – action under color of law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930-34 (1982). In limited circumstances, a private party will be deemed to be a state actor for purposes of § 1983. *See Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citing *National Broadcasting Co. v. Communications Workers of America*, 860 F.2d 1022, 1026-27 (11th Cir. 1988). These inquiries are relatively fact bound, thus making prima facie allegations by a plaintiff sufficient to withstand a motion to dismiss. *See Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 121 S. Ct. 924, 932 (2001); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 621 (1991); *Dunwoody Homeowners Ass'n v. DeKalb County*, 887 F.2d 1455, 1462 (11th Cir. 1989).

Plaintiffs' allegations present a problem. No state authority or officer has been named in the action, leaving HUD – via its rent subsidies and regulations – as the only evident governmental influence or direction of the private defendants. Section 1983 "provides 'a remedy for deprivation of rights under color of state law and does not apply when the defendants are acting under color of federal law.'" *Carman v. Parsons*, 789 F.2d 1532, 1534 (11th Cir. 1986) (quoting *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978). Plaintiffs' § 1983 claims must therefore fail.

Plaintiffs are proceeding *pro se*; however, which obliges the court to construe the complaint more liberally than it might otherwise. In so doing, the court finds plaintiffs to assert a *Bivens* action against the private defendants. A *Bivens* action permits a plaintiff to "state a cause of action and recover money damages against a federal official for constitutional violations occurring under the color of federal law." *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396 (1971); *see also Lee v.*

*Hughes*, 145 F.3d 1272, 1275 (11th Cir. 1998). "[S]uits under § 1983 and *Bivens* are very similar. A § 1983 suit challenges the constitutionality of the actions of state officials; a *Bivens* suit challenges the constitutionality of the actions of federal officials." *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995). Furthermore, courts typically apply § 1983 law in the *Bivens* context. *See Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998) (citing *Abella, supra*).

Using these principles to transform plaintiffs' § 1983 claims into *Bivens* claims is not automatic, however, for the defendants are private parties. The Supreme Court has never stated whether a *Bivens* action can be maintained against a private party (something permitted under § 1983). Furthermore, the question appears to be an open one in the Eleventh Circuit. *See Morast v. Lance*, 807 F.2d 926, 930-31 & n.5 (11th Cir. 1987).[10] In light of the facts alleged by the plaintiffs, and the posture of the case at this time, the court believes it necessary to resolve this question now. *See, e.g., Jeffries v. Georgia Residential Finance Authority*, 678 F.2d 919, 924-25 (11th Cir. 1982); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 358-359 (5th Cir. 1977); *McQueen v. Druker*, 317 F. Supp. 1122 (D. Mass. 1970), aff'd 438 F.2d 781 (1st Cir. 1971).[11]

The circuits are relatively uniform in their allowance of *Bivens* actions against private individuals. *See Gerena v. Puerto Rico Legal Servs., Inc.*, 697 F.2d 447 (1st Cir. 1983)

---

[10] In *Morast*, the court found the issue framed for its consideration. Nevertheless, the court refused to answer, noting that even if the permissibility of the action was presumed, the defendants could not properly be characterized as state actors. *See id.* at 931; *cf. Rayburn v. Hogue*, 241 F.3d at 1347.

[11] The court notes that plaintiffs' complaint predominantly seeks injunctive relief. The law is not clear as to whether a *Bivens* action seeking this sort of relief is proper. *Cf. Abella*, 63 F.3d at 1066. As the defendants have not addressed the question in their motion to dismiss, the court declines to reach the issue at this time.

9

(recognizing without so stating the maintenance of a *Bivens*-style action against private corporation); *Malesko v. Correctional Servs. Corp.*, 229 F.3d 374, 377-381 (2d Cir. 2000) (surveying law of circuit courts and recognizing *Bivens* action against private corporation and defendants); *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800-01 (3d Cir. 2001) (recognizing the maintenance of a *Bivens* action against a private corporation); *Dobyns v. E-Systems, Inc.*, 667 F.2d 1219, 1220-21 (5th Cir. 1982) (recognizing without so stating the maintenance of a *Bivens*-style action against private corporation); *Hammons v. Norfolk S. Corp.*, 156 F.3d 701, 705-08 (6th Cir. 1998) (recognizing *Bivens* action against private corporation); *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1337-38 (9th Cir. 1987) (finding private status of corporation and individual insufficient justification for the dismissal of *Bivens* action); *Reuber v. United States*, 750 F.2d 1039, 1053-60 (D.C. Cir. 1984); *overruled in part by Kauffman v. Anglo-American Sch. of Sofia*, 28 F.3d 1223, 1226-28 (D.C. Cir. 1994) (allowing *Bivens* actions against private individuals, but not private entities). The Fourth, Seventh, Eighth and Tenth circuits also recognize the potential for a *Bivens* action in certain circumstances. *See Brown v. Daniel*, 230 F.3d 1351 (4th Cir. 2000); *Platt v. Ihle*, 996 F.2d 1212 (4th Cir. 1993); *Malinowski v. DeLuca*, 177 F.3d 623, 625, 627 (7th Cir. 1999); *Csoka v. U.S. Government*, 94 F.3d 647 (7th Cir. 1996); *McNally v. Pulitzer Publ'g Co.*, 532 F.2d 69, 75-76 (8th Cir. 1976); *Beattie v. Boeing Co.*, 43 F.3d 559, 563 (10th Cir. 1994).

The purpose of a *Bivens* action is to give effect to the rule "that courts will be alert to adjust their remedies so as to grant the necessary relief" when deprivation of federally protected rights occurs. *Bivens*, 403 U.S. at 392 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946) (quotations omitted)). Such relief is a composite of complementing goals:

10

deterrence of the wrongful actor in contemplation of future conduct; and compensation for injury vis a vis the party's invocation of the judicial process. *See id.* at 394-96; *id.* at 407-08 (Harlan, J., concurring). Extension of this relief should, however, be made with caution. *See Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988); *Lee v. Hughes*, 145 F.3d 1272, 1276 (11th Cir. 1998). When "special factors counsel[] hesitation in the absence of affirmative action by Congress" a court should decline to permit the maintenance of a *Bivens* action. *Id.* at 423. When Congress has acted in a meaningful fashion, a *Bivens* action is also inappropriate. *See id.* at 422-29; *see also Bush v. Lucas*, 462 U.S. 367, 378-79 (1983). This impropriety remains even Congress' action can be characterized as incomplete. *Id.*

The remedial scheme of the Housing Act does not appear to offer the sort of meaningful relief that might counsel hesitation in this instance. The Supreme Court has observed that the Housing Act is virtually devoid of "private judicial remedies," save the availability of local grievance procedures. *Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 427 (1987). As discussed *supra*, the provisions of the Housing Act contain no implied remedies. *See Perry v. Housing Auth. of Charleston*, 664 F.2d 1210, 1216-17 (4th Cir. 1981); *Thomas v. Chicago Hous. Auth.*, 919 F. Supp. 1159, 1164 (N.D. Ill. 1996). The Act appears to vest in the secretary the power to levy civil penalties in certain proscribed circumstances -- such as failing "to provide decent, safe, and sanitary housing" -- but this language does not reach the conduct complained of here or vest in the plaintiffs' an express cause of action. *See* 42 U.S.C. § 1437z-1(a). The court further finds nothing in the regulations that, for purposes of this motion, rises to the level of meaningful relief.

11

In light of the uniformity among the circuits in permitting *Bivens* actions against private parties, and in the absence of any special factors counseling hesitation, the court finds that the plaintiffs may maintain a *Bivens* action against the private defendants. But this conclusion begs a question: for which of the claims may plaintiffs assert their *Bivens* actions? Based upon the parties' allegations, the court cannot say that the plaintiffs "can prove no set of facts in support of [their First Amendment] claim which would entitle [them] to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). This *Bivens* action may therefore proceed.

The *Bivens* action predicated upon the allegedly unlawful late fee assessments presents another matter entirely.[12] Here the constitutional hook one normally expects is absent, as the plaintiffs' seek enforcement of a right secured by statutory, as opposed to constitutional, law. The Supreme Court's reticence to expand the scope of *Bivens* to other constitutional settings strongly suggests that an extension into the statutory setting would be effected with the utmost care. Yet, bearing on the calculus is *Wright v. City of Roanoke Redevelopment and Housing Authority*, which specifically upheld the maintenance of a § 1983 claim to enforce the type of specific and definite provision of the Housing Act at issue here. If § 1983 and *Bivens* actions are as analogous as the Supreme Court and this circuit have purported, the claim here would seem appropriate. The court, therefore, will permit

---

[12] *See supra* note 9.

the plaintiffs' *Bivens* claim predicated upon the allegedly unlawful late fee assessments.[13]

Defendants motion to dismiss these claims is accordingly **DENIED**.

**V.     Conclusion.**

For the reasons set forth herein, the defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ____6th____ of September, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[13] The court notes that the plaintiffs have a long road ahead of them in order to prove their *Bivens* actions. Moreover, the court is not entirely certain that both plaintiffs are asserting a claim of unlawful fee assessments. However, at this time the court leaves the plaintiffs to their proof, and will address the matter further upon proper motion of the parties.